UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ,** §<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**TAX DEFENDER USA LLC,** a New York §<br>Limited Liability Company, and **THOMAS** §<br>**CAHILL** §<br>§<br>**Defendants.** §<br>§ | **EP22CV0432** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant TAX DEFENDER USA LLC ("TD" "Defendant") is a Limited Liability

Company organized and existing under the laws of New York with its principal place of business

at 40 Wall Street, Suite 3100, New York, New York 10005 and can be served via registered

agent Legalinc Corporate Services Inc. at 1967 Wehrle Drive, Suite 1 #086, Buffalo, New York

14221.

3.      Defendant THOMAS CAHILL ("Cahill") is an individual and the President and primary

owner of Defendant TD and can be served at 104 Levit Ave, Staten Island, NY 10314.

4.      Defendants TD and Cahill are hereinafter collectively referred to as "Defendants."

### NATURE OF ACTION

5.      Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop

1

placing unauthorized phone calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

6.      Defendants offers tax debt relief services to consumers.

7.      Defendant TD's representatives make unauthorized phone calls to thousands of consumers to solicit tax debt relief services on behalf of Defendant TD as authorized by Defendant Cahill.

8.      Defendants did not obtain express written consent from Plaintiff prior to calling his personal cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

9.      Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA targets unauthorized phone calls exactly like the ones alleged in this case, based on Defendants use of technological equipment to spam consumers on a grand scale without their consent.

11.     By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

12.     Plaintiff therefore seeks an injunction requiring Defendants and their agents to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

13.     This court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

14.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising

under Texas Business and Commerce Code 305.053 because that claim arises from the same

nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little

complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over

the TCPA claims.

15.     This Court has personal jurisdiction over Defendant TD because they conduct business in

this District and in the State of Texas and because the events giving rise to this lawsuit occurred

in this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant TD

regularly conducts business in the state of Texas and in this District, and because the wrongful

conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT
### OF 1991, 47 U.S.C. § 227

17.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

18.     The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

19.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

20.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

21.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

22.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

23.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

24.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

25.     The FCC requires "prior express written consent" for all autodialed or prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017)
(codifying a June 26, 2003 FCC order).

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

26.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

28.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

29.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

30.     Plaintiff's personal cell phone (XXX) XXX-1527 has been registered on the National Do-

Not-Call Registry since March 6, 2022.

31.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him

from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry

at all times relevant to this Complaint.

32.     Defendant TD offers tax debt relief services to consumers who owe federal back taxes to

the IRS.

33.     Defendant Cahill owns, controls, and operates Defendant TD.

34.     Defendant Cahill authorizes his representatives to make unauthorized phone calls to

thousands of consumers to solicit "tax debt relief services" on behalf of Defendant TD.

35.     Defendant Cahill provides instruction and guidance to his representatives on who to

solicit and the minimum qualifications of potential clients.

36.     Defendant Cahill has full control over his representatives and has the authority to stop the

illegal phone calls that violate the TCPA however has refused to do so because violating the

TCPA benefits Defendants financially.

37.     Defendants TD and Cahill have been sued prior to this lawsuit for violating the TCPA

*Callier v. Tax Defender LLC et al,* No. 3:22-cv-00181-FM (W.D.TX., May 20, 2022) and

continue their illegal behavior because violating the TCPA benefits Defendants financially.

38.     Plaintiff received at least nine (9) unauthorized phone calls to his personal cell phone 1527 within a two-month period from representatives calling on behalf of Defendant TD soliciting their tax debt relief services ("the calls").

39.     On July 6, 2022, Plaintiff received a phone call to his personal cell phone 1527 from phone number (915) 440-3931.

40.     Plaintiff answered and was greeted by a female representative named Alexa that stated she was with Defendant TD.

41.     Alexa advised Plaintiff the reason she was calling was to see if they can help Plaintiff with any tax issues he may have with the IRS.

42.     Plaintiff was annoyed and aggravated for receiving unauthorized phone calls to his personal cell phone 1527 soliciting tax debt services and advised Alexa he owed taxes to the IRS for the sole purpose of confirming the true identity of the company responsible for the calls.

43.     Alexa then asked Plaintiff a series of qualifying questions and stated to Plaintiff,

 "so Erik based on the information you have provided to me you pre-qualify for one of the government assistance that would surely reduce or even eliminate the percent of your tax liability"

44.     Alexa advised Plaintiff she was going to transfer Plaintiff to one of her "tax specialist's" and transferred him to another representative from Defendant TD named Michael.

45.     Michael solicited Plaintiff for tax debt relief services on behalf of Defendant TD and advised Plaintiff it would be a down payment of $199 to start with a "compliance check" to receive Plaintiff's transcripts from the IRS.

46.     Michael advised Plaintiff that Defendant TD's CPA's will work and negotiate Plaintiff's tax debt directly with the IRS.

47.     Plaintiff then received an email from Michael that contained a tax authorization form for Plaintiff to sign from Defendant TD. *See Exhibit A.*

48.     The email Plaintiff received from Michael confirmed the true identity of the company responsible for the calls.

49.     Plaintiff advised Brandon that he would review the form and call Brandon back if Plaintiff wanted to proceed with Defendant TDs tax debt relief services.

50.     Plaintiff did not give Michael his prior express written consent to call back Plaintiff and follow up.

51.     Michael continued to call and harass Plaintiff over the next few days to sign the form he sent to Plaintiff. On July 12, 2022, Plaintiff received a call from Michael and Plaintiff advised Michael he was no longer interested.

52.     Plaintiff received another call from Michael on July 28, 2022, despite Plaintiff advising Michael he was not interested in Defendant TD's services.

53.     Plaintiff not only received unauthorized calls from Michael but also from other representatives from Defendant TD named James, Jimmy, and Joe.

54.     Plaintiff is not and has never been a client of Defendants that would constitute any business relationship.

55.     The calls were not made for emergency purposes.

56.     Plaintiff never gave Defendants his prior express written consent to receive the calls.

57.     Defendant TD purposefully spoofed their caller IDs to Plaintiff's local area code (915) on four occasions to trick Plaintiff into thinking the calls were being made local.

58.     The table below displays the calls made to Plaintiff from Defendant TD:

8

| Number | Date | Time | Caller ID | Notes |
|--------|------|------|-----------|-------|
| 1. | 07/05/2022 | 10:16 AM | 915-440-3931 | Missed call |
| 2. | 07/06/2022 | 11:30 AM | 915-440-3931 | Alexa calling from TD soliciting tax debt relief services. Transferred to Michael from TD. Michael emailed info. |
| 3. | 07/06/2022 | 3:07 PM | 929-334-4394 | Michael calling to follow up and to sign form. |
| 4. | 07/07/2022 | 11:06 AM | 929-334-4394 | Michael calling to follow up and to sign form. |
| 5. | 07/12/2022 | 10:03 AM | 929-334-4394 | Michael calling to follow up and to sign form advised him I was not interested. |
| 6. | 07/28/2022 | 2:58 PM | 929-334-4394 | Michael calling to follow up and to sign form advised I had already told him I wasn't interested. |
| 7. | 08/04/2022 | 4:30 PM | 915-929-9926 | James calling from TD advised him I already told Michael I wasn't interested. |
| 8. | 08/08/2022 | 4:22 PM | 915-440-3931 | Jimmy calling from TD advised him I already told them I wasn't interested. |
| 9. | 08/30/2022 | 3:14 PM | 929-379-3235 | Joe calling from TD advised him I already told them I wasn't interested. |

59.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

60.     The calls Plaintiff received from Defendants were placed while knowingly ignoring the national do-not-call registry. The calls were placed without training their representatives on the use of an internal do-not-call policy.

61.     Plaintiff sent a request for Defendant TD's internal do not call policy on September 22, 2022, to info@taxdefenderusa.com which is an email listed on the website they own and control https://www.taxdefenderusa.com.

62.     On information and belief, Defendants did not have a written do-not-call policy while it was sending Plaintiff the calls.

63.     On information and belief, Defendants did not train its representatives who engaged in telemarketing on the existence and use of any do-not-call list.

64.     Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful telemarketing, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, representatives, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful telemarketing.

65.     Defendants refuse to take any action to stop or curtail the unlawful sales practices and illegal telemarketing because these practices benefit Defendants financially.

66.     Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

67.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration

Database") does not contain Defendant TD's or Cahill's registration.

68.     Defendants don't qualify for an exemption under § 302.053.

69.     The calls constituted "calls" under the TCPA that were not made for

emergency purposes.

## DEFENDANT CAHILL IS PERSONALLY LIABLE

70.     Defendant Cahill refuses to take any action to stop or curtail the unlawful sales practices

and unauthorized phone calls because these practices benefit Defendant Cahill financially when

consumers sign up for Defendant TD's tax debt services.

71.     "If the officer directly participated in or authorized the statutory violation, even though

acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution

Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

72.     The "well-settled" tort rule provides that "when corporate officers directly participate in

or authorized the commission of a wrongful act, even if the act is done on behalf of the

corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d

1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort]

rule is that the officer to be held personally liable must have some direct, personal participation

in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the

'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d

168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907

(1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

73.     Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or

personally authorized the conduct found to have violated the statute, and was not
merely tangentially involved.  Individuals who directly (and here, knowingly and
willfully) violate the TCPA should not escape liability solely because they are
corporate officers.  As the State persuasive argues, to hold otherwise would allow the
individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
repeat their conduct.  Congress surely did not intend to permit such a result in passing
the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
"central figures" behind the TCPA violations.  They were the two persons who
controlled all of Blastfax's day-to-day operations.  They both had direct, personal
involvement in and ultimate control over every aspect of Blastfax's wrongful contuct
that violate the TCPA, and/or directly controlled and authorized this conduct.  And
they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg
and Michael Horne had good reason to believe they were running a business that
violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued
to direct their company to send unsolicited intrastate fax advertisements.  This is fare
more than a simple derivative liability case.  Accordingly, the Court *899 holds
defendants Greg and Michael Horne are jointly and severally liable with Defendant
Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax,
Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

74.     The Same Court held that corporate officers were also personally liable for DTPA
violations

The State contends Greg and Michael Horne are personally liable for any DTPA
damages because they were solely responsible for the violating conduct......For the
same reasons discussed in finding the individual defendants personally liable under
the TCPA, the Court agrees.  See, e.g., Barclay v. Johnson, 686 S.W.2d 334, 336-37
(Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for
corporate officer in DTPA misrepresentation claim, based on general rule that "a
corporate agent knowingly participating in a tortious of fraudulent act may be held
individually liable, even though he performed the act as an agent for the
corporation......Accordingly, the Court finds defendants American Blastfax, Inc.,
Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages
for their violations of the DTPA." Texas v. American Blastfax, Inc., 164 F. Supp. 2d
892 (W.D. Tex. 2001

75.     At all times material to the Complaint, acting alone or in concert with others,

Defendant Cahill has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of Defendant TD including the acts or practices set forth in this Complaint.

76.     Defendant Cahill is the principal director and operator of Defendant TD controls the day-to-day operations of Defendant TD and directed their representatives, employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit tax debt services on behalf of Defendants.

77.     Defendant Cahill knowingly and willfully ignores the law. Defendants continue to make unauthorized phone calls to consumers to solicit their tax debt services.  These violations are the direct result of the instructions Defendant Cahill has given to their representatives, agents, employees, solicitors, salespersons, and others that carry out his schemes.

78.     Defendant Cahill is not merely a bystander and is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

79.     Defendant Cahill is well aware their conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Cahill is the sole director of Defendant TD and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Cahill has taken no steps to stop the behavior because the behavior benefits Defendants financially.

80.     Defendant Cahill should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

81.     Defendant Cahill should be held liable because to do otherwise would simply allow him to dissolve Defendant TD and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

## THE TEXAS BUSINESS AND COMMERCE CODE § 305.053

82.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

83.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

84.    The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

85.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

86.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

87.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

88.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

89.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to

prevent—a "nuisance and invasion of privacy."

90.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's

rights and interests in Plaintiff's cellular telephone.

91.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

92.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to:

reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and

more frequent charging of his cell phone.

### CAUSES OF ACTION:

### COUNT ONE:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

93.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the

preceding paragraphs.

94.     Defendants called Plaintiff's private residential telephone number which was successfully

registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls

for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47

C.F.R. § 64.1200(c)(2).

95.     Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(3)(F)

by Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

96.     Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

97.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT TWO:**
**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**

98.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

99.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

    b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

    c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

100.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

101.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT THREE

### (Violations of The Texas Business and Commerce Code 305.053)

102.    Plaintiff incorporates the foregoing allegations as if set forth herein.

103.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq.

104.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

105.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FOUR

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

106.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

107.    Defendants made at least nine (9) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

108.    As a result of Defendants and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

109.   As a result of Defendants and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.   Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.   An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation and individual for nine calls.

E.   An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.   An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.   An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.   An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

I.   Such further relief as the Court deems necessary, just, and proper.

18

November 18, 2022,                    Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com

Gmail - Sign document – 8821_PERSONAL_Eric Laiz + 1 more

 **Gmail**

**Erik Salaiz <salaiz.ep@gmail.com>**

**Sign document – 8821_PERSONAL_Eric Laiz + 1 more**
1 message

**Tax Defender** <notify@app.signeasy.com>
To: salaiz.ep@gmail.com

Wed, Jul 6, 2022 at 11:50 AM

# Signeasy

Hi Eric D Laiz,

Tax requested you to sign these documents.

**8821_PERSONAL_Eric Laiz**

**Compliance_Check_
Authorization_(1)_19_Nov_2021-
163628_06_Jul_2022-174845**

Review and Sign

All signers are listed in the order of signing.

salaiz.ep@gmail.com (Eric D Laiz) - Pending

Do not forward this email as it contains a secure link to
access the document. Click here to learn how to Sign. If
you weren't expecting this document, learn how to decline
signature requests.

Exhibit A

# Form 8821

**Tax Information Authorization**

(Rev. January 2021)

Department of the Treasury
Internal Revenue Service

▶ Go to www.irs.gov/Form8821 for instructions and the latest information.
▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
   or to authorize someone to represent you. See instructions.

*For IRS use only*

**1 Taxpayer information.** Taxpayer must sign and date this form on line 5

Taxpayer name and address

Eric B Lutz
310 Valley Faisway
El Paso,TX 78937

Taxpayer identification number(s)
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

Daytime telephone number | Plan number (if applicable)
915-888-7327

**2 Designee(s).** If you wish to name more than two designees, attach a list to this form. Check here if a list of additional designees is attached ▶ ☐

Name and address

David Funes
40 Wall Street # 1700
Manhatten NY 10005

CAF No. ____ 0216-35049R
PTIN ____ P03409848
Telephone No. ____ (212)208-0758
Fax No. ____ (917)979-4780

Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

Name and address

Egor Morozov
40 Wall Street Suite 1700
New York NY 10005

CAF No. ____ 021407275R
PTIN ____ P02504394
Telephone No. ____ (929)130-0471
Fax No. ____ (917)979-4780

Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

**3 Tax information.** Each designee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☐ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a) Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b) Tax Form Number (1040, 941, 720, etc.) | (c) Year(s) or Period(s) | (d) Specific Tax Matters |
|---|---|---|---|
| Income & Shared Responsibility Payment | 1040 | 1996-2022 | NA |
| Civil Penalties | NA | 1996-2022 All Qtrs | NA |
| Income Assessment | 1040 (MFT 31) | 1996-2022 | NA |

**4 Specific use not recorded on the Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip line 5 ▶ ☐

**5 Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior tax information authorizations on file unless you check the line 5 box and attach a copy of the tax information authorization(s) that you want to retain ▶ ☐

To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 5 instructions.

**6 Taxpayer signature.** If signed by a corporate officer, partner, guardian, partnership representative, or designated individual, executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify that I have the legal authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ IF NOT COMPLETED, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.

▶ DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.

_____ | _____
Signature | Date

_____ | _____
Print Name | Title (if applicable)

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.   Cat. No. 11596P   Form **8821** (Rev. 1-2021)

Exhibit A



**TAX DEFENDER**
**Tax Defender LLC**
40 Wall St #1700 New York, NY 10005
(800)493-2559   info@taxdefenderusa.com
www.taxdefenderusa.com

### AUTHORIZATION FORM

This authorization form acknowledges the consent given by you for the release of information provided by the IRS on the client's behalf. The 8821 authorization form signed by the client allows Tax Defender USA (hereafter referred to as "company") to investigate a compliance status with tax filings from the IRS. These tax investigations may include, but are not limited to open balances, missing tax returns, account transcripts, unrealized wage and income transcripts, and outside debt.

Once a client signs the 8821 authorization form and has made a complete payment for the compliance check, the tax compliance analyst will contact the IRS on the client's behalf for the thorough tax investigation. After obtaining necessary information and transcripts provided by the IRS, a member from our company will contact the client to deliver the tax investigation and determine what's the best resolution suited for the client.

Should your payment default, be disputed, and/or incur any penalties of any kind, you will be liable to honor fee and said penalties.

Upon signing this document, you acknowledge that you understand the services provided and consent to proceed with Tax Defender USA.

Thank you,

**Tax Defender USA**
**Tax Compliance Department**
(646)493-6651

_____
**Name of Client**

_____     2000002
**Signature of client**                Date

Exhibit A